DWYER *v.* HICKLER *et al.*

(*Superior Court of Buffalo, General Term.* December 30, 1891.)

MASTER AND SERVANT—NEGLIGENCE OF FELLOW-SERVANTS.

Plaintiff, who was engaged in the construction of a sewer, dumping into the trench the brick and mortar to be used by the brick-layers in building up the sewer which the trench was to contain, was injured by the giving way of soil from the side of the trench, owing to insufficient bracing. It appeared that the foreman of the "bracing gang," whose duty it was to protect the sides of the trench, was in all respects competent, and that sufficient and proper materials had been furnished for

doing the work. *Held*, that the accident was caused by the negligence of fellow-servants, and not by that of the master, though he had recently passed along the sewer to see that the work was properly done. TITUS, J., dissenting.

Appeal from trial term.

Action by James E. Dwyer, by guardian, against Peter Hickler and others for personal injuries. From a judgment for plaintiff entered on the verdict of a jury, and from an order denying a motion for a new trial made on the minutes of the court, defendants appeal. Reversed.

Argued befor TITUS and HATCH, JJ.

*Giles E. Stilwell*, for appellants.   *Charles F. Whitcher*, for respondent.

HATCH, J.   The action is to recover damages for the negligent construction of a sewer, whereby plaintiff was injured. The particular defect relied upon to constitute negligence and create liability is the failure to provide a safe and secure place for the plaintiff to prosecute his work. This failure is claimed to consist in negligently omitting to secure the sides of the trench with sufficient braces, whereby some of the soil became loosened, fell out of its place, and, striking plaintiff, broke his leg. The general rule of law is that a master is bound, in the first instance, to furnish for his servant a reasonably safe and secure place for the prosecution of his labor. Has that duty been discharged in this case? The opening of the trench and supporting the same was prosecuted by men engaged in different branches of the work, but all tending to a common end. Some dug out the earth, and filled the buckets; some placed the ranges, braces, and sheathing to support the sides as the earth was removed; and, finally, the plaintiff dumped the brick and mortar in the completed trench, while the brick-layers built up the sewer which the trench was to contain. The negligence of defendants, if there be any, consists in the failure to sufficiently brace the sides of the trench at the place where the dirt fell out. The duty of protecting the sides of the trench rested upon one Forge, who was foreman of the "bracing gang." The proof showed, indeed it is not contended against, that Forge was a skillful person, acquainted with his duties, and in all respects competent to perform them. Thus the master discharged the obligation resting upon him of furnishing a competent co-servant for this branch of the work. *Hofnagle* v. *Railroad Co.*, 55 N. Y. 608. It also appears without dispute that there was furnished an abundance of material, braces, ranges, and sheathing, which, if used, would have properly protected the sides of the trench. The master thus discharged this obligation. *Ford* v. *Railroad Co.*, (N. Y. App.) 22 N. E. Rep. 946. The cause of the accident, therefore, does not rest upon any failure of defendants to provide a safe place for plaintiff to perform his labor; on the contrary, it is the result of a failure of competent servants to make use of proper materials, furnished by defendant, to make the trench safe. But this is the negligence, not of defendants, but of the co-servants, and for that defendants are not liable. *Hogan* v. *Smith*, 125 N. Y. 774, 26 N. E. Rep. 742; *Loughlin* v. *State*, 105 N. Y. 159, 11 N. E. Rep. 371; *Cullen* v. *Norton*, 126 N. Y. 1, 26 N. E. Rep. 905.

It is suggested, by the learned chief judge, that one of the defendants was actively engaged in overseeing the work as it progressed, and consequently he was personally chargeable with knowledge of the condition, and was bound to know of the defect. The testimony is to the effect that he appointed Forge foreman of the bracing, and furnished necessary materials to be used for that purpose; that he passed over the sewer to see that the work was properly done. I am of opinion that this does not change the result, for when he had furnished everything necessary to secure safety, and given directions how the work should be done, he had discharged his duty, and the omission was the failure of the servants to discharge the duty resting upon them. *Zeigler* v. *Day*, 123 Mass. 152; *Floyd* v. *Sugden*, 134 Mass. 563; *Mining Co.* v. *Kitts*,

42 Mich. 34, 3 N. W. Rep. 240. I have found no case going so far as to hold that a master, who is generally overseeing the work, and who has furnished competent servants and sufficiency of material, and given necessary instructions, is bound, at his peril, to see that the work is properly done and his instructions followed out. It is far from being conclusively shown how the accident occurred. It is nearly, if not quite, as strong, that the dirt was loosened by the necessary construction of the brick-work in the trench, and the consequent disturbance of the sheathing boards, as that it happened from lack of braces. Perhaps there was enough upon this point to submit to the jury. But, upon grounds already indicated, I am of opinion that the judgment and order should be reversed, and a new trial ordered; costs to abide the event.

TITUS, J. I concur in the conclusion reached by Judge HATCH in his opinion that the judgment must be reversed, but not in the reasons assigned by him. There is some evidence in the case that the defendant McConnell was upon the ground at the time, or just before, the accident happened, and knew that the sides of the sewer at that point had commenced to crack; that a consultation was had between him and some of his employes, and it was determined not to strengthen the embankment. At this time McConnell was directly and personally in charge of the work, and responsible for any neglect in properly bracing the weak spots, he having full knowledge of its condition. And it is beyond controversy that there were cracks in the wall; that the situation was dangerous; and that the accident occurred within 20 minutes after. There is no evidence that the plaintiff had any knowledge of the condition of the sewer, or that he was in any way responsible for its condition, or for the injury to himself. There is also evidence in the case that up to this point it had been customary to use three sets of braces in supporting the sides of the sewer, and that three sets were used after this point was passed, but that only two sets of braces were used at this point in strengthening the bank. It further appears in the case that before this point was reached seams and crevices had appeared in the soil, and that extra precautions were necessary to protect the bank where those seams occurred. It seems to me from these facts it became a question which the jury should pass upon, and that no error was committed in submitting the question of the defendants' negligence to the jury by the court.

I think, however, that the verdict is excessive, and should be set aside on that ground. The plaintiff was 19 years old. The injury, while serious, was not dangerous. The bone was broken squarely off,— a simple fracture. From the evidence, no permanent injury is or will result. The boy was confined to his house for six weeks, and for a time thereafter walked with the aid of crutches, and after five months he went to work as usual. The jury awarded him $2,500, and it does not seem to me that for the injury the plaintiff was entitled to that sum. It is true the jury had a right to take into account the pain which he suffered, but they must have been misled as to the importance of that question upon the measure of damages. The accident occurred, not from any willful or malicious act upon the part of the defendants, but simply the want of exercise of that care which men under such circumstances are called upon and required to exercise. I think, therefore, that the judgment and order should be reversed solely upon the ground that the amount awarded by the jury is excessive.