## WILLIAM MULLIGAN *vs.* THOMAS McCAFFERY.

Bristol.    October 27, 1902. — January 7, 1903.

Present: MORTON, LATHROP, BARKER, & LORING, JJ.

*Negligence,* Contributory, Employer's liability, Superintendence.

If an experienced lineman, engaged with others in stringing a trolley wire at the end of the horizontal arm or bracket of a supporting pole, makes use of a ladder leaning against the wire in such a way as to bring the greatest strain upon the bracket, instead of placing the ladder against the wire as nearly upright as safely can be done in order to relieve the strain on the wire and bracket as much as possible, and if he then mounts to the top of the ladder above the wire and leans over to pull out an iron spindle which has been inserted in the end of the bracket to make more purchase in pulling up the wire, and extracts the spindle by pulling it away from him, thus subjecting the bracket to a strain it was not constructed to withstand, whereupon the bracket breaks and throws the lineman to the ground, he is not in the exercise of due care, and cannot recover from his employer for injuries thus sustained.

If one of a gang of four linemen, engaged in the common work of digging holes, setting poles, putting on brackets and stringing wires, receives the same wages as the others and does the same work, but owing to his greater experience acts as foreman of the gang and gives such directions as the nature of the work requires, both when his employer is present and when he is not, this does not make him a person whose sole or principal duty is that of superintendence.

MORTON, J.    This is an action for personal injuries received by the plaintiff while engaged as a lineman in the employ of the defendant in erecting poles, and stringing wires for the East Taunton Street Railway.    There was a verdict for the plaintiff and the case is here on exceptions by the defendant to the refusal of the judge to rule that the evidence did not warrant a verdict for the plaintiff.

The negligence relied on is that of one Parker who it is claimed was the superintendent, or was acting as such with the authority and consent of the defendant in his absence.

The accident occurred in connection with the operation of

pulling out the trolley wire to its proper position above the track. A spindle of iron had been inserted by the plaintiff by Parker's direction in the outer end of the horizontal arm of the bracket so as to get the necessary purchase for pulling out the wire. The plaintiff was on a ladder which leaned against and was supported by the wire. After the wire had been pulled out and fastened to the bracket, and while the plaintiff was in the act of removing the spindle from the arm, the bracket broke, and the plaintiff was thrown to the ground and received the injuries complained of.

The case is not free from difficulty but it seems to us that the plaintiff was not in the exercise of due care and that Parker was not acting solely or principally as superintendent.

The plaintiff was an experienced lineman, forty-nine years of age. Though he testified that he did not put up any of the brackets and did not see any of them put up, there is nothing to show that he was not familiar with the mode in which and the material of which they were generally constructed, or that the bracket in question was any different from those generally used. There was uncontradicted testimony from the defendant that the brackets were of a kind sold in the market, and in general use upon railroads in the vicinity. There was testimony tending to show that the mode adopted for pulling out the wire tended to weaken the bracket. But the mode was assented to by the plaintiff and seems indeed to have been adopted by Parker in consequence of the plaintiff's suggestion that the arm was not long enough to put the tackle on and get the necessary purchase. The real cause of the accident would seem to have been, not the unusual mode in which the wire was pulled out, for that was successfully accomplished, but the additional strain to which the bracket was subjected by the manner in which the plaintiff proceeded to take the spindle out of the arm after the wire had been pulled out, and which he did in his own way, and without any direction from Parker except the general one, to take it out. It was obvious that the purpose of the bracket was to suspend the trolley wire over the track, and that it must have been constructed with reference to that purpose. But the plaintiff instead of placing the ladder against the wire as nearly upright as could be safely done in order to relieve the strain on

the wire and bracket as much as possible, permitted the ladder to remain at the inclination at which it was left by the pulling out of the wire, and then mounted to the top which projected above the wire and towards the end of the arm and leaned over to take hold of the spindle and pull it out by pulling it away from him, — thus subjecting the bracket to a strain which there was no reason to suppose it was constructed to withstand and making, as one of the witnesses for the plaintiff testified, a calculation, as to what the strain " on the whole thing " was, impossible. It would seem that hardly any method could have been adopted of pulling out the spindle which would have subjected the bracket at the point where it was attached to the pole to greater strain, and it seems to us that the plaintiff was not in the exercise of due care in doing what he did.

Further, although there was testimony that Parker exercised acts of superintendence we do not think that it could have been fairly found upon the evidence that his sole or principal duty was that of superintendence. He was one of a gang of four engaged in the common work of digging holes, setting poles, putting on brackets and stringing wires. He received the same wages as the other linemen and on the day of the accident and immediately before had been doing the same work that the plaintiff was doing and at the place of the accident assisted in pulling out the wire and fastening it to the arm. · He gave directions and orders both when the defendant was there and when he was not. But in giving such orders and directions, he acted, it seems to us, as a workman whose experience qualified him to give them, and not as one whose sole or principal duty was that of superintendence. It is manifest, we think, that he was there principally as a workman, but by virtue of his greater experience he acted also as foreman of the small gang to which he belonged and gave such directions as the nature of the work required. This was far from making his sole or principal duty that of superintendence. See *Dowd* v. *Boston & Albany Railroad*, 162 Mass. 185 ; *O'Brien* v. *Rideout*, 161 Mass. 170 ; *Cunningham* v. *Lynn & Boston Street Railway*, 170 Mass. 298.

*Exceptions sustained.*

*L. E. White*, for the defendant.
*J. W. Cummings*, (*C. R. Cummings* with him,) for the plaintiff.